UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YUNIOR CARDONA MEJIA,

                Petitioner,

    v.

DREW BOSTOCK, et al.,

                Respondents.

Case No. C26-1149-SKV

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner Yunior Cardona Mejia is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center in Tacoma, Washington ("NWIPC").  Petitioner, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he asserts that his detention is unconstitutional, and he seeks immediate release from custody.  *See* Dkt. 5.  Respondents have filed a return (Dkt. 7), together with the supporting declarations of ICE Deportation Officer Gary Ingram (Dkt. 8) and Respondents' counsel Jordan C. Steveson (Dkt. 9).  Petitioner has filed a reply to Respondents' return.  Dkt. 10.

The Court, having reviewed the parties' submissions and the governing law, finds that Respondents' re-detention of Petitioner, without prior notice or an opportunity to be heard,

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

violated his constitutional right to due process. Accordingly, the Court GRANTS Petitioner's federal habeas petition and ORDERS that Petitioners be released from detention within 24 hours.

## I.    BACKGROUND

Petitioner is a native and citizen of Honduras. *See* Ingram Decl., ¶ 3; Steveson Decl., Ex. A. Petitioner and other members of his family entered the United States on January 28, 2014, without being admitted or paroled, and the family unit was encountered by United States Border Patrol in the Rio Grande Valley Texas Border Patrol Sector. Ingram Decl., ¶ 4, Steveson Decl., Ex. A at 3. The family unit was arrested and processed for expedited removal.[1] *See id.* During processing, Petitioner was identified under another name associated with another alien number, an error that was not discovered until many years later. *See* Ingram Decl., ¶¶ 5, 7-9; Steveson Decl., Ex. A at 3.

On January 29, 2014, Petitioner and his family were released on an Order of Supervision ("OSUP") which imposed reporting requirements and other conditions of release. Graham Decl., ¶ 6; Steveson Decl. Ex. A at 3. The family was released due to a lack of bed space at the "family center," and was instructed to report to the Baltimore ICE office on February 26, 2014. *See id.* The family reported to the Baltimore ICE office on February 24, 2014, and they were instructed to report again on May 20, 2014, with their passports. *Id.* This is the only information in the record pertaining to Petitioner's initial removal proceedings.

On or about July 1, 2025, ICE's Office of Enforcement and Removal Operations ("ERO") encountered and arrested Petitioner's brother, and subsequently removed him under an expedited removal order. Graham Decl., ¶ 7; Steveson Decl., Ex. A at 3. The brother had previously been convicted in the Circuit Court for Baltimore County and sentenced to a term of

---

[1] The expedited removal process is governed by 8 U.S.C. § 1225(b)(1).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

imprisonment, and had used Petitioner's name and date of birth at the time of his arrest on the criminal charges. *See* Steveson Decl., Ex. A at 3. Petitioner's brother, Christian Isaac Cardona-Orellana was deported under Petitioner's name. *Id.*

On March 6, 2026, ERO Baltimore encountered Petitioner while conducting a targeted enforcement action directed at Petitioner's father, Enemias Cardona. *See* Steveson Decl., Ex. A at 3. ERO officers observed Petitioner exiting the front door of a residence, entering the "target" vehicle, and driving away, before conducting a vehicle stop. *Id.*; *see also* Graham Decl., ¶ 8. Petitioner was asked for identification, and he provided a Maryland state driver's license bearing the name Yunior Eduardo Cardona-Mejia. *Id.* A records check using the name and date of birth appearing on the driver's license revealed a negative immigration history, and Petitioner was taken into custody and transported to ICE's Baltimore Field Office for further processing. *Id.*

During processing, it was discovered that Petitioner had originally been processed under the name of one of his brothers, Fernando Jose Cardona-Mejia, a brother who was deported on July 5, 2025. Steveson Decl., Ex. A at 3. It was further discovered that the brother who had been convicted of the criminal offenses was deported under Petitioner's name on July 2, 2025. *Id.* Because of the confusion surrounding the names and alien numbers in Petitioner's family unit, Petitioner was assigned a new alien number and ERO issued an arrest warrant and custody redetermination notice to Petitioner under the new number. *See id.*, Exs. A-C; *see also* Graham Decl., ¶ 9.

On March 19, 2026, Petitioner was issued a Notice to Appear ("NTA") charging him as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), and scheduling him for full removal proceedings before an immigration judge ("IJ"). Graham Decl., ¶ 10; Steveson Decl., Ex. D. Petitioner had by that

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

time been transferred to NWIPC.  *See* Steveson Decl., Ex. D.  Petitioner appeared *pro se* before an IJ in the Tacoma immigration court on March 30, 2026, for his initial master calendar hearing and was granted a continuance to retain counsel.  Graham Decl., ¶ 11.  Petitioner was scheduled to appear again before the IJ on April 20, 2026.  *Id*.  The record does not reveal the outcome of that hearing.

As of the date Respondents filed their return, April 20, 2026, Petitioner had not had a bond hearing nor was he scheduled to appear for one.  Graham Decl., ¶ 12.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

Petitioner's petition presents nine separate grounds for relief, all directed to the lawfulness of his arrest and his continuing detention.  *See* Dkt. 5 at 30-34.  Notably absent from the petition is any claim directly challenging the constitutionality of Petitioner's re-detention,

even though it is the claim most obviously suggested by the facts asserted in the petition. Petitioner did, however, make brief reference to the issue in the body of his lengthy petition, (*see id.* at 25, 28), and Respondents' return shows they inferred such a claim and responded to it (*see* Dkt. 7 at 6-8). The Court will therefore address that claim alone, as it is the only claim that asserts a tenable basis for relief.[2]

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz*, 53 F.4th at 1206-07; *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). The Court applies the *Mathews* test below.

As to the first *Mathews* factor, Petitioner has a strong liberty interest in not being detained. The Supreme Court has recognized that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi*, 542 U.S. at 529 (the interest in not being detained "is the most elemental of liberty interests"). When Petitioner was released on an OSUP in January 2014, he acquired a liberty interest protected by the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court

---

[2] Counts I-IX of Petitioner's federal habeas petition (Dkt. 5 at 30-34) are DISMISSED.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).

Respondents, while acknowledging the "weighty liberty interests implicated by the Government's detention of noncitizens," appear to suggest that Petitioner has a reduced liberty interest in not being re-detained because immigration authorities determined at the time he and his family arrived in the United States in 2014 that they should be removed, and the only reason the expedited removal order was not effectuated was that there was no space available to detain the family upon their arrival. *See* Dkt. 7 at 6-7 (quoting *Reyes v. King*, 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021)). Respondents' suggestion, in fact, reinforces the strength of the liberty interest at stake here as the inability of the Department of Homeland Security ("DHS") to effectuate Petitioner's removal at the outset has allowed him ample time over the ensuing twelve years to establish ties to the United States and the community in which he lives. The first *Mathews* factor favors Petitioner.

As to the second *Mathews* factor, the procedures used to re-detain Petitioners created a high risk of erroneous deprivation of his liberty. The record indicates that Petitioner was released on an OSUP in January 2014 and was subject to reporting requirements and other conditions of release. Respondents do not assert, nor does the record suggest, that Petitioner ever violated the conditions of his release, nor is there any indication Respondents at any point took steps to terminate the OSUP. Respondents argue only that the risk of a constitutionally significant and erroneous deprivation of Petitioner's liberty is minimal because he is subject to mandatory detention under 8 U.S.C. 1225(b)(2)(A). However, as courts in this District have held, "the fact 'that the Government has a valid reason to detain Petitioner does not eliminate its

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

obligation to effectuate the detention in a manner that comports with due process.'" *Ramirez Tesara*, 800 F. Supp. 3d at 1137 (quoting *E.A. T.-B.*, 795 F. Supp. 3d at 1322).

The Court observes that before a noncitizen may be released from immigration custody, on humanitarian parole under 8 U.S.C. § 1182(d)(5), as it appears Petitioner was here, or on conditional parole under 8 U.S.C. § 1226(a)(2), a determination must be made that the noncitizen presents neither a danger to the community nor a flight risk. *See* 8 C.F.R. § 212.5(b); 8 C.F.R. § 1236.1(c)(8). Where a petitioner's release was necessarily based on consideration of such factors, "arresting and re-detaining [a petitioner] . . . without first reconsidering those factors poses a significant risk of an erroneous deprivation of [the petitioner's] liberty interest in continued release." *See E.A. T.-B.*, 795 F. Supp. 3d at 1323. There is no indication in the record that these factors were considered prior to Petitioner's re-detention. Indeed, it appears from the record before the Court that Petitioner's arrest was arbitrary.

Petitioner was re-detained when ERO officers conducting an enforcement operation targeting Petitioner's father saw Petitioner get into the "targeted vehicle" and drive away from the residence they were surveilling. *See* Steveson Decl., Ex. A at 3. Officers conducted a traffic stop, requested identification, which Petitioner provided, and ran records checks which revealed a "negative immigration history.' *See id*. Though the record lacks clarity on this point, it appears the purported negative history may relate to confusion regarding Petitioner's identity attributable to mistakes made when Petitioner and his family were initially processed into the United States in 2014. *See id.* Of particular note is the fact that DHS records apparently indicated that an individual using Petitioner's name and date of birth had been deported in July 2025 based on a criminal conviction. *See id*. However, ICE officers discovered while processing Petitioner following his re-detention that the previously deported individual was one

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

of Petitioner's brothers and not Petitioner himself. *Id.* Given the confusion regarding Petitioner's identity, additional safeguards would have afforded opportunity to ascertain the facts and decreased the risk of arbitrary or otherwise unlawful detention. The second *Mathews* factor therefore favors Petitioner.

Finally, as to the third *Mathews* factor, though the government has legitimate interests in enforcing the immigration laws and ensuring appearance at proceedings, Respondents identify no concrete way in which providing a pre-deprivation custody hearing before re-detention would materially impede those interests. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings is modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Respondents have not identified any exigent circumstances that would have made a pre-deprivation process impracticable. Thus, the third *Mathews* factor also favors Petitioner.

In sum, the *Mathews* factors strongly favor Petitioner and habeas relief is therefore warranted. Given the lack of lawful process at the outset of detention and the absence of exigent circumstances, release is the appropriate and constitutionally required remedy. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324.

### IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition (Dkt. 5) and ORDERS that Petitioner be RELEASED from immigration detention within 24 hours on conditions consistent with those in place at the time of his re-detention. Respondents shall file a certification within 48 hours that Petitioner has been released. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

DATED this 6th day of May, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9